IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SANHUA INTERNATIONAL,
INC., *et al.*,

    Plaintiffs,

    vs.

DAVID A. RIGGLE, *et al.*,

    Defendants.

Case No. 2:17-cv-368

Judge James L. Graham

Chief Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

Plaintiffs assert claims of breach of contract, professional negligence, unjust enrichment, quantum meruit, and bad faith against Defendants arising from Defendants' alleged untimely filing of appeals ("Protests") with the U.S. Customs and Border Protection. Plaintiffs seek damages in excess of $5,000,000. This matter is now before the Court for consideration of the Motion to Transfer Venue Under 28 U.S.C. § 1404 of Defendants David J. Craven and Riggle & Craven (ECF No. 61), Plaintiff's Memorandum in Opposition (ECF No. 63), and Defendants' Reply Memorandum (ECF No. 64). For the reasons that follow, the Motion to Transfer Venue is **GRANTED**.

I.

A.     **Factual Allegations**

Plaintiffs allege that Plaintiff Zhejiang Sanhua Co., Ltd. ("Zhejiang") is "a foreign limited liability company formed in the Country of China" and that Plaintiff Sanhua International, Inc. ("Sanhua") is an Ohio corporation doing business in Plain City, Ohio and a

1

wholly owned subsidiary of Zhejiang. (ECF No. 1 at ¶¶ 1–3.) At some point prior to October 22, 2015, Zhejiang and/or Sanhua hired Defendants David A. Riggle, Esq. and David J. Craven, Esq., attorneys practicing law in Chicago, Illinois, and Defendant Riggle & Craven, a legal professional association organized under the law of the State of Illinois, to represent Plaintiffs. (*Id*. at ¶¶ 4–6, 13, 16.) The scope and nature of Defendants' representation in antidumping proceedings[1] in the U.S. Department of Commerce, International Trade Administration is described as follows:

> 14. Specifically, Defendants were retained to represent Plaintiffs in U.S. Department of Commerce, International Trade Administration antidumping proceedings referred to as Frontseating Service Valves from the People's Republic of China, Case No. A-570-933. Defendants' representation of the Plaintiffs included five (5) administrative reviews in the aforementioned case. In each of the administrative reviews in which Defendants represented Plaintiffs, the request for review was limited to products produced by ZSC [Zhejiang] for sale in the United States. The requests did not include any other ZSC [Zhejiang] subsidiaries or affiliates or any other exporters.
>
> 15. As a result of the administrative reviews, Case No. A-570-933-002 was assigned to ZSC [Zhejiang] for its applicable antidumping duty rate on frontseating valves imported ("entered") into the United States. During the years the antidumping order in the case was in effect, SHI [Sanhua] made estimated antidumping duty deposits at the time of entry and received refunds of the duties according to various rates determined in the Department of Commerce proceedings.
>
> 16. On or about October 22, 2015, SHI [Sanhua] received a U.S. Customs and Border Protection ("CBP") Notice of Action, dated October 15, 2015, from SHI's [Sanhua's] logistics provider. The Notice of Action listed 18 entries. All of the

---

[1] "The antidumping statute requires Commerce to impose antidumping duties on imported merchandise that is being sold, or is likely to be sold, in the United States at less than fair value to the detriment of a domestic industry." *Tung Mung Dev. Co., Ltd. v. United States*, 219 F. Supp. 2d 1333, 1338 (Ct. Int'l Trade 2002) (citing 19 U.S.C. § 1673 (1999)). "The purpose underlying the antidumping laws is to prevent foreign manufacturers from injuring domestic industries by selling their products in the United States at less than 'fair value,' *i.e*., at prices below the prices the foreign manufacturers charge for the same products in their home markets." *Torrington Co. v. United States*, 68 F.3d 1347, 1352 (Fed.Cir. 1995). "The duty that is consequently imposed is the amount by which the price charged for the subject merchandise in the home market exceeds the price charged in the United States." *Tung Mung Dev. Co., Ltd.*, 219 F. Supp. 2d at 974 (citing 19 U.S.C. § 1673).

entries were to be reliquidated at a higher "all others" antidumping duty rate, instead of the lower rate assigned to ZHC under Case No. A-570-933-002.

17. On or about November 2, 2015, SHI [Sanhua] received another Notice of Action, dated October 28, 2015, listing 71 entries to be reliquidated at the higher "all others" rate.

18. After receiving the Notices of Action, Plaintiffs notified Defendants and requested their legal assistance. Defendants agreed to be Plaintiffs' legal representatives and to represent their interests.

19. Based upon communications with Defendant Riggle, Plaintiffs understood that Protests could be filed with CBP regarding the entries, once notice of liquidation/reliquidation was received.

20. On or about December 21, 2015, by regular U.S. mail, SHI [Sanhua] received bills from CBP, all dated December 11, 2015. A second set of bills, each dated December 18, 2015, was received by regular mail at SHI [Sanhua], on or about December 28, 2015. Copies of each of these documents were forwarded to Defendant Riggle for further handling and filing of Protests. These notices, as well as copies of all entries and supporting documents were provided to Defendant Riggle, no later than January 23, 2016.

(*Id.* at ¶¶ 14–20.)

Plaintiffs allege that they had one hundred and eighty (180) days from the date of bill issuance to protest the liquidation of the entries pursuant to regulations under U.S. Customs and Border Protection ("CBP"). (*Id*. at ¶ 21.) On or around June 2, 2016, Defendant Riggle advised Plaintiffs that "he would be submitting the first Protest the following day and that the remainder of the Protests would follow promptly." (*Id*. at ¶ 22.)

On or around June 20, 2016, Defendant Craven advised Plaintiff by email that he had gone to work at a different law firm because Defendant Riggle & Craven had been dissolved. (*Id*. at ¶ 23.) On or around June 23, 2016, "Plaintiff" spoke with Defendant Riggle by phone who confirmed that "all Protests have been timely filed and he would send copies evidencing the same." (*Id*. at ¶ 24.) However, despite multiple emails to Defendant Riggle, Plaintiff never received copies of these Protests from Defendants. (*Id*. at ¶¶ 24–26.)

3

At some point thereafter, Plaintiffs learned that the Protests were time-stamped on June 17, 2016, "but were considered to be late by nine (9) days." (*Id*. at ¶ 26.) CBP denied the Protests as untimely on June 28, 2016. (*Id*. at ¶ 27.) As a result, "the liquidations against the Plaintiffs became legally finalized and payment on the bills became due" in an amount in excess of five million dollars ($5,000,000). (*Id*. at ¶¶ 30–31.) "In addition, because the Protests were denied, Plaintiffs were placed on the Customs National Sanction list which requires estimated duties to be remitted at time of entry, via electronic transfer, revoked Plaintiffs of its immediate delivery privileges, and future imports can be subjected to additional exams." (*Id*. at ¶ 32.)

Sanhua has received copies of the denied Protests signed by Defendant Riggle & Craven as of June 6, 2016, but time-stamped June 17, 2016, which is beyond the one hundred and eighty (180) days in which Plaintiff had to timely file Protests. (*Id*. at ¶ 28.) Despite Plaintiffs' repeated requests, none of the three Defendants have provided Plaintiffs or Plaintiffs' agents access to the files of the dissolved law firm, Defendant Riggle & Craven. (*Id*. at ¶ 29.)

**B.  Procedural History**

On April 28, 2017, Plaintiffs filed this action, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1331 and asserting claims of breach of contract, professional negligence, unjust enrichment, quantum meruit, and bad faith. (*See generally id*.) Plaintiffs seek damages in excess of $5,000,000. (*Id*.)

On July 10, 2017, Defendants Craven and Riggle & Craven filed an Answer. (ECF No. 12.) When Defendant Riggle failed to respond to the Complaint, the Clerk entered default against him. (ECF No. 16.) The Court ultimately granted default judgment against Defendant Riggle on November 17, 2017, and referred the matter to the undersigned to conduct a hearing on damages. (ECF Nos. 32, 33.) The undersigned therefore set a date for a hearing on damages,

which, at the parties' requests, was continued on two occasions to May 21, 2018. (ECF Nos. 34, 35, 36, 38, 39.)

On October 13, 2017, the non-defaulting Defendants Craven and Riggle & Craven ("the non-defaulting Defendants") filed a Motion to Transfer Venue. (ECF No. 22.) However, they proceeded with discovery. (ECF Nos. 29, 41.) On April 27, 2018, the Court met with the non-defaulting Defendants and Plaintiffs, noting that they continued "to cooperate in the discovery process and have exchanged a voluminous amount of documents." (ECF No. 41 at 1.) These parties also continued to confer about a global resolution of the entire case." (*Id*.) To permit the parties ample time to review and assemble documents and to exhaust all efforts at compromise, the undersigned continued the damages hearing to September 6, 2018. (*Id*.) In addition, upon the Court's inquiry (*id*. at 2) and with the non-defaulting Defendants' consent (ECF No. 43), the Motion to Transfer Venue (ECF No. 44) was denied without prejudice to renewal should the parties be unable to reach a settlement. (ECF No. 44.)

In June into early August 2018, Plaintiffs and the non-defaulting Defendants reported that they continued to work together, exchange documents, and discuss settlement. (ECF Nos. 45, 46, 47.) The parties also reported difficulties caused by Defendant Riggle who "has defaulted and is not participating; in addition, Mr. Riggle is likely the defendant who possesses the information and documentation most relevant to Plaintiffs' case." (ECF No. 45 at 2.) However, the parties specifically represented that progress had been made with settlement negotiations with Defendant Craven. (ECF No. 46 at 2; ECF No. 47 at 2.) Based on these representations, the undersigned continued the damages hearing to December 5, 2018. (ECF No. 48.)

In late August into October 2018, Plaintiffs and the non-defaulting Defendants continued their discovery and settlement efforts, expressing optimism that they could resolve this matter

despite the difficulty of obtaining any information from Defendant Riggle. (ECF No. 49 at 2; ECF No. 50 at 2.) On November 1, 2018, however, Plaintiffs only reported that although they "were hopeful that resolution would be possible, their discussions have recently broken down, making it apparent that further discovery will need to occur, including, but not limited to, depositions and formal discovery. Plaintiffs regret that settlement has not been reached in this matter." (ECF No. 51 at 2.)

On November 16, 2018, the Court conducted a status conference, by telephone, and directed Plaintiffs and the non-defaulting parties to submit a report pursuant to Federal Rule of Civil Procedure 26(f) and to propose a date for a continued damages hearing. (ECF Nos. 54 and 55.) The undersigned continued the hearing on damages to April 15, 2019 (ECF No. 58), and conducted a preliminary pretrial conference pursuant to the provisions of Federal Rule of 16(b) (ECF No. 60.)

Thereafter, the non-defaulting Defendants filed a Motion to Transfer Venue Under 28 U.S.C. § 1404. (ECF No. 61.) After the Motion to Transfer Venue was fully briefed (ECF Nos. 63, 64), the undersigned vacated the hearing on damages set for April 15, 2019, pending resolution of the pending Motion. (ECF No. 66.) This matter is now ripe for resolution.

## II.

Defendants Craven and Riggle & Craven move to transfer venue to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "Courts must engage in a two-step analysis under § 1404(a) and determine (1) whether the action could have been brought in the proposed transferee court, and (2) whether considering all relevant factors, the balance of

convenience and the interest of justice 'strongly' favors transfer." *Paschal v. Fla. Dep't of Revenue*, No. 3:18-cv-93, 2018 WL 5791914, at *1 (S.D. Ohio Nov. 5, 2018) (citing *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 850 (S.D. Ohio 2007)). Transfer pursuant to Section 1404 must be "to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964); *see also Shanehchian v. Macy's, Inc.*, 251 F.R.D. 287, 292 (S.D. Ohio 2008) ("[Section] 1404 does not allow . . . for transfer if that transfer would only shift the inconvenience from one party to another."). The moving party bears the burden to establish a need for transfer. *Kay*, 494 F. Supp. 2d at 849–50 (citing *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002)); *see also Paschal*, 2018 WL 5791914, at *1.

"Even in cases where venue is proper, a court may entertain a motion to transfer if there exists a better forum for the resolution of the dispute between the parties." *Paschal*, 2018 WL 5791914, at *1 (quoting *SKY Tech. Partners v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 290–91 (S.D. Ohio 2000)). "Ultimately . . . the decision whether to transfer venue under § 1404(a) is committed to the sound discretion of the trial court." *Levy v. Cain, Watters & Assocs.*, P.L.L.C., No. 2:09-cv-723, 2010 WL 271300 at *9 (S.D. Ohio Jan. 15, 2010); *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) ("As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate."). Section 1404(a) promotes "an individualized case by case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation omitted).

7

**III.**

**A.     The Action Could Be Brought in the Northern District of Illinois**

The Court first turns to the threshold consideration under § 1404(a), *i.e.*, whether the action could be brought in the transferee court. *Kay*, 494 F. Supp. 2d at 849. "An action might have been brought in the transferee court if: (1) the transferee court has jurisdiction over the subject matter of the action; (2) venue is proper in the transferee court; and (3) the defendants are amenable to process issuing out of the transferee court." *Pacific Life Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 1:15-cv-416, 2016 WL 223683, at *3 (S.D. Ohio Jan. 19, 2016) (citing *Sky Tech. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio Dec. 21, 2000)).

These elements are satisfied here. The Northern District of Illinois would have diversity jurisdiction over this action because the parties are citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000. 28 U.S.C. § 1332(a). In addition, Defendants do not dispute that the court has personal jurisdiction over them in Illinois. Accordingly, venue is also proper in the Northern District of Illinois. *See* 28 U.S.C. § 1391(b)(1), (c)(1), (c)(2).

**B.     Private Interests Are Best Served by Transfer**

Having found that this action could be brought in the Northern District of Illinois, "the issue becomes whether transfer is justified under the balance of the language of § 1404(a)." *Kay*, 494 F. Supp. 2d at 849. In determining the private interests, a court balances "'all relevant factors' to determine whether 'the litigation would more conveniently proceed . . . by transfer to a different forum.'" *Pacific Life Ins. Co.*, 2016 WL 223683, at *5 (quoting *Slate Rock Constr. Co. v. Admiral Ins. Co.*, No. 2:10-cv-1031, 2011 WL 3841691, at *6 (S.D. Ohio Aug. 30, 2011)). The private interest factors that the Court considers include the Plaintiffs' choice of forum,

convenience of the parties, convenience of the witnesses, relative ease of access to sources of proof, the availability of process to secure the presence of unwilling witnesses. *Id.*; *Paschal*, 2018 WL 5791914, at *1.

1. **Plaintiffs' choice of forum warrants little weight while the location of operative facts favors transfer.**

"The plaintiff's choice of forum usually is given 'great weight' when considering whether to transfer venue under 1404(a)." *Campbell Soup Supply Co., LLC v. Direct Contact, LLC*, No. 5:18-cv-942, 2018 WL 6248531, at *5 (N.D. Ohio Nov. 29, 2018) (citations omitted) (granting motion to transfer venue). A plaintiff's preference, however, is not dispositive. *Commerzbank AG v. U.S. Bank N.A.*, No. 1:15-cv-818, 2016 WL 3255071 at *2 (S.D. Ohio June 14, 2016) (granting motion to transfer venue). A "[p]laintiff's choice of forum 'is entitled to significantly less weight where the forum has no connection with the matter in controversy.'" *Id.* (quoting *St. Joseph Sol., LLC v. Microtek Med., Inc.*, No. 1:11-cv-388, 2011 WL 5914010, at *7 (S.D. Ohio Nov. 28, 2011)); *see also Kay*, 494 F. Supp. 2d at 852 (finding that "[a]t a minimum, this absence of events connecting the litigation to Ohio negates the deference ordinarily given to a plaintiff's choice of venue"); *Am. Signature Inc. v. Moody's Investors Servs., Inc.*, No. 2:09-cv-878, 2010 WL 2667367, at *2 (S.D. Ohio July 2, 2010) (stating that courts give plaintiff's choice of forum "little weight" where none of the complained-of conduct occurred in the plaintiff's selected forum).

Here, Plaintiffs contend that the Court should give weight to their choice of forum. (ECF No. 63 at 3.) This Court disagrees for the reasons that follow. While Plaintiff Sanhua is an Ohio corporation doing business in Plain City, Ohio, Plaintiff Zhejiang is a foreign limited liability company formed in China. (ECF No. 1 at ¶¶ 1–2.) Defendant Craven, an Illinois attorney, avers that it was Plaintiff Zhejiang, through a law firm in China, that retained Defendant Riggle &

9

Craven, a law firm organized under the laws of Illinois, to represent it in antidumping matters before the United States International Trade Commission and the U.S. Department of Commerce. (Declaration of David Craven, ECF No. 61-2, ¶¶ 3, 15 ("Craven Declaration").) Plaintiff Zhejiang's principals, because of language issues, primarily communicated with Defendant Riggle & Craven through Chinese counsel. (*Id.* at ¶ 4.) In connection with this representation, Defendant Riggle & Craven made filings with various federal administrative agencies in Washington, D.C. and with the U.S. Customs and Border Protection in California but did not make any filings before any federal agency or tribunal located in Ohio. (*Id.* at ¶ 5.)[2] Although they oppose transfer, Plaintiffs do not dispute the Craven Declaration. (*See generally* ECF No. 63.)

After considering the non-defaulting Defendants' uncontroverted evidence described above, the Court finds that the location of the operative facts has no connection to Ohio. Conversely, Plaintiff Zhejiang retained Defendants, Chicago-based attorneys and a law firm organized under the laws of Illinois, and communicated with them in Illinois. Plaintiffs' claims in this action arose from this legal representation. Based on this record, Plaintiff's choice of forum is therefore entitled to little weight and this factor weighs strongly in favor of transfer. *See Commerzbank AG*, 2016 WL 3255071 at *2; *Kay*, 494 F. Supp. 2d at 852; *Sacklow v. Saks Inc.*, No. 3:18-cv-00360, 2019 WL 1986763, at *5 (M.D. Tenn. May 6, 2019) (stating that the locus of operative facts is an important factor in resolving a motion to transfer venue).

---

[2] Notably, certain filings related to the antidumping proceedings under the case number identified by Plaintiffs in the Complaint (*see* ECF No. 1 at ¶ 14 (identifying proceedings with Case No. A-570-933)) also confirm that Defendants represented only Plaintiff Zhejiang in these proceedings. *See Zhejiang Sanhua Co., Ltd. v. United States*, 61 F. Supp. 3d 1350 (2015); Frontseating Service Valves From the People's Republic of China; Final Results of Antidumping Duty Administrative Review, No. A-570-933, 80 Fed. Reg. 44031–44033 (July 24, 2015).

### 2. Convenience of the parties favors transfer.

Plaintiffs contend that Ohio is a more convenient venue because "their primary witnesses reside in central Ohio" and they "would have to potentially miss work and travel[.]" (ECF No. 63 at 3.) Plaintiffs also note that their "lead counsel resides in central Ohio[.]" *Id*. Plaintiffs go on to argue that the non-defaulting Defendants have provided no evidence that Defendant Riggle still remains in Illinois. (*Id*. at 2.)

Plaintiffs' arguments are not well taken. As an initial matter, the inconvenience of Plaintiffs' employees is entitled to little or no weight and therefore does not weigh against transferring this action. *Nationwide Mut. Fire Ins. Co. v. Barbour*, No. 5:15 cv 456, 2015 WL 5560209, at *3 (N.D. Ohio Sept. 21, 2015) ("As the agents['] employer, Nationwide has the power and ability to compel his appearance for deposition or trial. The convenience of such a witness is not a factor weighing in favor of retaining the case in Ohio."); *Egrsco, LLC v. Evans Garment Restoration, LLC*, No. 2:09-cv-358, 2009 WL 3259423, at *6 (S.D. Ohio Oct. 8, 2009) ("The Defendant identified several witnesses that would find it inconvenient to travel to this Court, but three of the four witnesses are the Defendant's employees. As such, their convenience is not a consideration."); *Zimmer Enter., Inc. v. Atlandia Imports, Inc.*, 478 F. Supp. 2d 983, 991 (S.D. Ohio 2007) ("Many courts have applied or recognized the rule that, upon a motion to change venue the convenience of witnesses who are a party's employees will not ordinarily be considered, or at least, that the convenience of such employees will not generally be given the same consideration as is given to other witnesses.").

Although Plaintiffs contend that the location of their lead counsel weighs against transfer, the "convenience of counsel is not a factor to be considered when ruling on motion for transfer." *United States v. Currency $96,770*, No. 16-cv-11185, 2016 WL 7367424, at *7 (E.D. Mich. Dec.

11

20, 2016) (collecting cases); *see also Torus Specialty Ins. Co. v. Selection Mgmt. Systems, Inc*., No. 1:15-cv-755, 2016 WL 776614, at *3 (S.D. Ohio Feb. 29, 2016) ("Moreover, the location of counsel is an 'improper consideration' in the section 1404(a) analysis.") (citations omitted). Moreover, the Court also notes that Plaintiff Zhejiang is a Chinese entity that would have to travel internationally whether the case stays in Ohio or is transferred to Illinois.

Plaintiffs also argue that the non-defaulting Defendants have offered no evidence that Defendant Riggle remains in Illinois. (ECF No. 63 at 2, filed on January 4, 2019.) However, Defendant Craven has averred under oath that the primary witnesses with direct knowledge of this matter reside in Illinois. (Craven Declaration, ¶ 13.) Moreover, Plaintiffs recently identified Defendant Riggle in their witness list as residing in Evanston, Illinois, undercutting their present assertion that it is unclear whether this Defendant resides in Illinois. (*See* ECF No. 65 at 2, filed on January 31, 2019, *after* Plaintiffs argued in their opposition brief on January 4, 2019, that it was uncertain whether Defendant Riggle remained in Illinois.)

Conversely, the non-defaulting Defendants have provided uncontroverted evidence that litigating this matter in Ohio presents a financial hardship to them that would be alleviated if this matter was transferred to Illinois. Specifically, Defendant Craven avers that, to the best of his knowledge, Defendant Riggle & Craven "has no significant assets beyond some potentially uncollected bills that may, or may not, have been sent by David Riggle and some unsuccessful attempts made by David Craven to collect such bills" and that it "is believed to have no further liabilities or assets and has ceased all operations." (Craven Declaration, ¶ 9.) He further avers that he "has no significant assets beyond a small retirement fund and a health savings account started in the middle of 2016. He has two old cars, does not own a house or other property or other investments." (*Id*. at ¶ 10.) Under these circumstances, the non-defaulting Defendants

disagree with Plaintiffs that taking time off work, driving five and half hours to Columbus, Ohio, or spending money (even around $150 for a flight to this district), is a slight expense or inconvenience (ECF No. 63 at 2), particularly where Defendant Craven is already admitted to practice in the Northern District of Illinois. (ECF No. 61-1 at 5; ECF No. 64 at 3.) Moreover, the non-defaulting Defendants point out that Plaintiffs "have [already] sought to take advantage of this distance issue" when they refused to consent to participate telephonically in the preliminary pretrial conference and sought to require Defendants' presence in Ohio for a fifteen-minute procedural conference. (*Id*. at 3 n.1, 5 (arguing further that the non-defaulting Defendants believe that Plaintiffs oppose transferring venue primarily to increase the pressure on Defendant Craven financially); *see also id*. at PAGEID ## 224–25 (copy of email thread reflecting Plaintiffs' request that Defendant Craven appear in person for the conference).)

The non-defaulting Defendants' arguments and uncontroverted evidence are well taken. "[T]he financial hardship of litigating in a particular forum is an aspect of convenience." *Waal v. AFS Tech., Inc.*, No. 1:14-cv-94, 2014 WL 1347794, at *6 (W.D. Mich. Apr. 4, 2014) (finding it was safe to assume that "the financial impact" on a company with offices all over the country of litigating in Michigan would be much less than the financial impact on the individual plaintiff residing in Michigan of litigating in Connecticut); *see also Harris v. BNP Paribas*, No. 2:09-cv-691, 2010 WL 1817248, at *4 (S.D. Ohio May 6, 2010) (finding that convenience of parties weighed against transfer where the individual plaintiff presented a sworn affidavit of his financial status and where the defendant company "is in a far better position to bear the cost of litigating this action in Ohio than Mr. Harris would be in being required to litigate in either New York or Illinois"); *Country Maid, Inc. v. Haseotes*, 312 F. Supp. 1116, 1118 (E.D. Pa. 1970) ("This vast difference in size and scale of [the parties'] operations necessarily magnifies the

13

extent of any inconvenience the plaintiff might experience as a result in favor of the defendants."). This factor therefore weighs strongly in favor of transfer.

      3.     **Convenience of the non-party witnesses and availability of process to secure presence of unwilling witnesses favor transfer.**

Plaintiffs and the non-defaulting Defendants have identified non-party witnesses located in Ohio, Illinois, and California. (Craven Declaration, ¶¶ 11, 13; ECF No. 63 at 3; ECF No. 64 at 3–4; ECF No. 65.) "The convenience of witnesses, especially non-party witnesses, is perhaps the most important factor in the transfer analysis." *Sacklow*, 2019 WL 1986763, at *4 (granting motion to transfer venue). "Convenience to witnesses is more than a numbers game; a court should not merely tally witnesses but should instead evaluate the significance of their expected testimony." *Fryda v. Takeda Pharm. N. Am., Inc.*, No. 1:11–cv–00339, 2011 WL 1434997, at *3 (N.D. Ohio Apr. 14, 2011) (granting motion to transfer venue). In addition, courts consider whether such witnesses would be subject to compulsory process. *Id.* ("Moreover, that these centrally-relevant Illinois witnesses would not be subject to compulsory process in Ohio is critical. Under Federal Rule of Civil Procedure 45(c)(3), a subpoena may be quashed if it requires a witness to travel more than 100 miles."); *Donohoe v. Corpak Medsystems, Inc.*, No. 4:17-cv-443, 2017 WL 1628424, at *3 (N.D. Ohio Apr. 28, 2017) (same).

Here, both parties identify a surety, Avalon Risk Management ("Avalon"), located in Elk Grove Village, Illinois, which appears to be one of the most important, if not the most important, witnesses. In Plaintiffs' identification of witnesses filed with the Court, they expect Avalon to testify as to CBP's surety payment demand, the surety's protest and denial of same, payments by surety to CBP, "contact with Great American Insurance Company (surety) and the reimbursement payments from Plaintiffs to Great American Insurance Company, and retaining law firm to file the surety protest and not file a Court of International Trade action after denial of

14

surety's protest." (ECF No. 65 at 3.) The non-defaulting Defendants further explain that Avalon was the surety company that underwrote the customs bond (Craven Declaration, ¶ 11) and that Plaintiffs recently admitted that Avalon filed a protest with the CBP that "addressed all of the issues that would have been raised in the purportedly late filed protest by" Defendant Riggle, that Avalon's "protest was denied by CBP on substantive grounds, thus the purported malpractice had no financial impact on Sanhua and thus even if liability were to exist, the damages were minimal." (ECF No. 64 at 3–4.) Avalon's testimony is therefore critical to this case. Its location in Elk Grove Village more than 100 miles from the Court and, therefore, beyond the reach of compulsory process, weighs heavily in favor transfer. *See* Fed. R. Civ. P. 45(c)(3); *Donohoe*, 2017 WL 1628424, at *3; *Fryda*, 2011 WL 1434997, at *3.

Other non-party witnesses—representatives of CBP and officers/agents/employees of a law firm that handled the protest for the surety—are located in California (ECF No. 65 at 2–3; ECF No. 64 at 4) and therefore they would have to travel whether this action stays in Ohio or is transferred to Illinois. Plaintiffs do not address the convenience of these witnesses. (*See generally* ECF No. 63.) Nevertheless, the non-defaulting Defendants persuasively argue that transferring this action to Illinois would be less burdensome for these non-party witnesses because of the availability of numerous non-stop flights between San Francisco and Chicago, versus few, if any, non-stop flights between San Francisco and Columbus (ECF No. 64 at 4). *Cf. McDaniel v. GEICO Gen. Ins. Co.*, No. 1:12-cv-2028, 2013 WL 1790167, at *8 (E.D. Cal. Apr. 26, 2013) (taking judicial notice of flights appearing on airport's website and Travelocity when considering the convenience of the parties and respective burdens of each forum under Section 1404(a) analysis). The convenience of these California-based witnesses weighs in favor of transferring the action.

Finally, Plaintiffs identify as a potential witness "the surety company involved in this matter," Great American Insurance Company ("Great American"), which is located in Cincinnati, Ohio and "which maintains records relating to the surety demand, payment, and surety protest in this matter." (ECF No. 63 at 3.) While it is true that staying in this forum would be more convenient for Great American, this fact alone does not outweigh the convenience of the other non-party witnesses previously discussed, particularly Avalon, which is expected to provide testimony essential to the issues in this case and beyond the reach of compulsory process in this Court. In short, the presence of a critical non-party witness more than 100 miles from the court as well as the convenience of other important non-party witnesses weigh strongly in favor transfer.

### 4. Access to sources of proof is neutral.

The non-defaulting Defendants contend that documents relevant to the issues in this matter are located in Illinois while Plaintiffs contend that there is no evidence that the relevant files are still there. (ECF No. 61-1 at 6; ECF No. 63 at 2.) Regardless of where this evidence is located "[t]he location of documentary evidence is a minor consideration when a court is considering a transfer under § 1404(a), since technological advances in document storage and retrieval make transporting documents less burdensome." *Donohoe*, 2017 WL 1628424, at *2. This minor factor is therefore neutral.

### C. Public Interests Favor Transfer.

As the non-default Defendants point out and as previously discussed, Ohio has no connection to the events underlying this action. Conversely, the alleged professional negligence of Defendants occurred in Illinois. Illinois would therefore have a greater interest in resolving allegations of legal negligence asserted against counsel licensed to practice in that state. *Cf. In re*

16

*JCC Capital Corp.*, 147 B.R. 349, 357 (Bkrtcy. S.D. N.Y. 1992) (transferring action from New York to California because "although the malpractice issues involved in this adversary proceeding do not raise complex or unsettled principles of California law, the State of California does have an interest in resolving a controversy involving allegations of malpractice defined by California law and asserted against attorneys licensed in its state").

Finally, the interests of justice weigh in the non-defaulting Defendants' favor. As set forth above, the non-defaulting Defendants have limited resources to litigate the action in this forum while Plaintiffs face no such challenges litigating in Illinois. *Peters v. Graber Indus., Inc.*, No. 91-1507-B, 1992 WL 420915, at *2 (D. Kan. Dec. 30, 1992) ("Finally, the interests of justice tilt in Peters' favor. Graber is the subsidiary of a large corporation and generates millions of dollars of revenues annually. Peters is an individual and presumably does not possess the financial resources that Graber does."); *cf. Waal*, 2014 WL 1347794, at *6; *Harris*, 2010 WL 1817248, at *4; *Country Maid, Inc.*, 312 F. Supp. at 1118.

### IV.

In sum, the Court concludes that the balance of interests weighs strongly in favor of transfer and that this Court's discretion is best exercised in transferring this action. Accordingly, Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404 (ECF No. 61) is **GRANTED**. The Clerk is **DIRECTED** to transfer this case to the Northern District of Illinois, Eastern Division.

    **IT IS SO ORDERED.**

**DATED: May 13, 2019**             */s/ Elizabeth A. Preston Deavers*
                                                   **ELIZABETH A. PRESTON DEAVERS**
                                                   **CHIEF UNITED STATES MAGISTRATE JUDGE**